IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| James Franklin Burch, | ) | C/A No. 0:19-1349-PJG |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** |
| Andrew Saul, Commissioner of Social Security,[1] | ) ) ) | |
| Defendant. | ) ) ) | |

This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff, James Franklin Burch, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); see

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted as the named defendant because he became the Commissioner of Social Security on June 17, 2019.

also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 416.920(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 416.920(h).

**ADMINISTRATIVE PROCEEDINGS**

In January 2015, Burch applied for SSI, alleging disability beginning May 23, 2013. Burch's application was denied initially and upon reconsideration, and he requested a hearing before an ALJ. A video hearing was held on January 25, 2018, at which Burch appeared and testified and was represented by Christi B. McDaniel, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision on June 26, 2018, concluding that Burch had not been disabled since the application was filed on January 15, 2015. (Tr. 12-21.)

Burch was born in 1958 and was fifty-seven years old on the date the application was filed. He has a ninth-grade education and has past relevant work experience as a truck driver and freight loader. (Tr. 251.) Burch alleged disability due to diabetes, high blood pressure, high cholesterol, arthritis, back pain, nerve pain, stomach pain, leg pain, and foot pain. (Tr. 250.)

In applying the five-step sequential process, the ALJ found that Burch had not engaged in substantial gainful activity since January 15, 2015—the date the application was filed. The ALJ also determined that Burch's arthritis, diabetes with neuropathy, and hypertension were severe impairments. However, the ALJ found that Burch did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ found, after consideration of the entire record, that Burch retained the residual functional capacity "to perform medium work as defined in 20 CFR 416.967(c) except that [he] cannot not climb ladders, ropes, or scaffolds; must avoid concentrated exposure to vibration; and he must avoid working at unprotected heights or walking on uneven terrain." (Tr. 16-17.) The ALJ found that Burch was unable to perform any past relevant work, but that considering Burch's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy

that Burch could perform.  Therefore, the ALJ found that Burch had not been disabled since his application was filed on January 15, 2015.

The Appeals Council denied Burch's request for review on March 18, 2019, thereby making the decision of the ALJ the final action of the Commissioner.  (Tr. 1-5.)  This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017); Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig, 76 F.3d at 589; see also Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015).  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Craig, 76 F.3d at 589; see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012).  Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

**ISSUE**

Burch states that his issue on appeal is "[w]hether substantial evidence supports the ALJ's decision that Plaintiff was not disabled under the Act." (Pl.'s Br. at 2, ECF No. 17 at 2.) Review of Burch's brief suggests that the crux of Burch's arguments is a challenge to the ALJ's residual functional capacity assessment.

**DISCUSSION[3]**

Burch first argues that the ALJ failed to properly explain Burch's residual functional capacity as required by SSR 96-8p. Specifically, Burch argues that, other than the opinions of the state agency record reviewers who considered the evidence through April and September 2015, the evidence supports greater physical limitations. Burch directs the court to medical evidence of his insulin dependent diabetes with polyneuropathy, low back pain, neck pain, and bilateral shoulder pain. Burch also points to his testimony concerning the pain and numbness in his hands and his shoulder pain that he alleges impacts his ability to handle objects; his back pain and foot pain and numbness impacting his ability to stand and walk, and his need to change positions frequently. Burch also appears to argue that the ALJ failed to consider the arthritis and degenerative changes in Burch's neck and left shoulder in determining Burch's residual functional capacity, and whether the ALJ found these alleged impairments to be severe or nonsevere impairments. Finally, Burch argues that the ALJ erred in failing to explain his application of SSR 14-2p. Specifically, Burch argues that the ALJ failed to consider the combined effects of Burch's

---

[3] The court notes that numerous social security regulations and social security rulings (SSRs) have changed effective March 27, 2017. However, these changes specifically state that they are applicable to claims filed *on or after* March 27, 2017. See, e.g., 20 C.F.R. §§ 416.913, 416.927. Because the instant claims were filed prior to that date, all references in the instant Order are to the prior versions of the regulations which were in effect at the time Burch's application for benefits was filed, unless otherwise specified.

diabetes mellitus, such as polyuria, polypepsia, polydipsia, nocturia, tingling and pain in his hands and feet, weakness, light-headedness, and dizziness on Burch's ability to work.

A claimant's residual functional capacity ("RFC") is "the most [a claimant] can still do despite [his] limitations" and is determined by assessing all of the relevant evidence in the case record.  20 C.F.R. § 416.945(a)(1).  In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence."  20 C.F.R. § 416.945(a)(3).  Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity.  Further, "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alterations in original); see also Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016).

As an initial matter, Burch bears the burden of producing evidence demonstrating how his impairments affected his functioning during the relevant time period.  See 20 C.F.R. § 416.912(c); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Creegan v. Colvin, No. 1:13CV5, 2014 WL 3579659 (W.D.N.C. July 21, 2014) ("It is the claimant's burden, however, to establish her RFC by demonstrating how her impairment impacts her functioning.").

Upon review of the record as a whole, the court finds that Burch has not demonstrated that the ALJ's residual functional capacity analysis and finding are unsupported by substantial evidence or controlled by an error of law.  As stated above, the ALJ found that Burch retained the

residual functional capacity "to perform medium work as defined in 20 CFR 416.967(c) except that [he] cannot not climb ladders, ropes, or scaffolds; must avoid concentrated exposure to vibration; and he must avoid working at unprotected heights or walking on uneven terrain." (Tr. 16-17.)  Burch argues that the evidence, including his testimony and the medical evidence of his insulin dependent diabetes with polyneuropathy, low back pain, neck pain, and bilateral shoulder pain, supports greater physical limitations.  Review of the ALJ's decision reveals that the ALJ carefully considered and evaluated the evidence as to these impairments.  In fact, the ALJ appears to have explicitly considered and addressed most, if not all, of the records raised by Burch.  The ALJ simply found that these records were inconsistent with each other and that further limitations were not warranted.  Further, contrary to Burch's apparent assertion that the ALJ failed to consider the arthritis and degenerative changes in Burch's neck and left shoulder, the ALJ's decision reflects explicit consideration of these impairments.  (See Tr. 14, 16, 18, 19.)

      The ALJ acknowledged Burch's long history of diabetes mellitus with associated neuropathy in Burch's hands and legs.  The ALJ observed that during a March 2015 consultative examination with Dr. Pravin Patel, Dr. Patel stated that Burch reported being diagnosed with Type II diabetes mellitus fifteen years before and "indicated that he had tingling and pain in his hands, legs, and feet, but that he did not take any medication for his condition, and he had not presented to the emergency room or admitted to the hospital for the management of his symptoms."  (Tr. 18.)  Further, the ALJ observed that Dr. Patel's physical examination revealed that Burch "had good peripheral pulses, no clubbing, cyanosis, or edema, and sensory examination showed slightly diminished sensation to touch and pain in both hands and feet." (Tr. 18) (citing Tr. 337).  The ALJ noted that (1) in August 2015, Burch presented to the emergency room after not being compliant with his diabetic diet and that Burch's symptoms improved with the administration of insulin and

intravenous fluids, and (2) in November 2016, Burch was hospitalized overnight with symptoms of lightheadedness, weakness, and dizziness due to dehydration leading to acute kidney impairment and hypotension, and diabetes mellitus with mild ketoacidosis and that after Burch was treated with intravenous fluids for his dehydration, Burch was cleared to go home the following day. (Id.) (citing Tr. 542). The ALJ stated that in May 2017, Burch reported that he was feeling well with only minor complaints and had been compliant with checking his glucose. The ALJ also found that

> [c]omplicating the claimant's diabetes mellitus with neuropathy is arthritis and hypertension. During his consultative examination with Dr. Patel, the claimant's blood pressure measured 137-96 mmHg, there were no signs of gross motor deficits, and his reflexes were normal. The claimant had full range of motion in the cervical spine, shoulders, elbows, wrists, knees, hips, and ankles, and although he reported mild knee pain with flexion, he also had full range of motion in the knees. The claimant's lumbar spine was mildly tender with decreased range of motion with bilaterally positive straight-leg raising tests, and he had no deformities of the hands, normal range of motion of the upper extremities, and normal fine and gross manipulations. The claimant was able to slow tandem walk and did not require the use of an assistive device, but he was unable to walk on heels or toes.

(Tr. 18) (citing Tr. 336-38).

The ALJ observed that, thereafter, records reflected Burch was able to control his blood pressure with medication, but he continued to report diffuse musculoskeletal pain despite treatment. (Tr. 19) (citing Tr. 413). The ALJ considered Burch's physical examination from August 2016 where Burch "presented with generalized swelling in his hands, but he ambulated with a normal gait and normal posture, full range of motion in the joints of the hands, and no tenderness, erythema, or warmth." (Tr. 19) (citing Tr. 424-25). With regard to Burch's left shoulder, the ALJ found as follows:

> The claimant reported developing left shoulder pain in March 2017. On examination on March 23, 2017, the claimant had palpable tenderness of the left trapezius, but he had full range of motion in the left shoulder, intact sensation to light touch, good grip strength in each hand, 2+ radial pulses, no neurological

> deficits, and normal motor strength and normal coordination (Exhibit C11F/62-63). Despite using Gabapentin, the claimant reported worsening shoulder pain in June 2017. On examination on June 29, 2017, the claimant presented with normal posture and gait, but he had decreased range of motion in the left shoulder due to pain with mild tenderness, and abnormal mobility in the right shoulders (Exhibit C10F/3-5).

(Tr. 19.) The ALJ also acknowledged Burch's September 2017 cervical spine x-ray indicating "hypertrophic degenerative changes of the vertebral endplates associated with neuroforaminal narrowing bilaterally" and Burch's left shoulder imaging indicated "hypertrophic spurring and moderate degenerative change of the acromioclavicular joint." (Tr. 19) (citing Tr. 582). However, the ALJ found that "[d]espite these diagnostic imaging results, on physical examination, the claimant had only mildly tender neck muscles with increased tone on palpation, but normal gait, normal posture, and full range of motion of the cervical spine, lumbar spine, and left shoulder without signs of crepitus, clicking, or abnormal mobility." (Id.) (citing Tr. 582-85).

Thus, contrary to Burch's arguments, review of the ALJ's opinion as a whole reflects that he sufficiently explained Burch's residual functional capacity assessment and the basis for the limitations and restrictions included. To the extent that Burch's arguments hinge on his testimony, the ALJ found that Burch's subjective complaints were not entirely consistent with the medical evidence and other evidence of the record. Further, the ALJ specifically considered the medical evidence, including the evidence Burch relies on in support of his position, and explained that the evidence did not support greater limitations than those opined by the state agency medical consultants. The ALJ observed that the record "demonstrates that even though the claimant has neuropathy in his extremities as well as degenerative changes in the cervical spine and left shoulder, [] he retained the ability to ambulate effectively and perform fine and gross movements effectively." (Tr. 19) (citing Tr. 317-18, 338, 584). Additionally, contrary to Burch's argument that the ALJ failed to consider the combined effects of Burch's diabetes mellitus, such as polyuria,

polypepsia, polydipsia, nocturia, tingling and pain in his hands and feet, weakness, light-headedness, and dizziness on Burch's ability to work in accordance with SSR 14-2p, the above summary of the ALJ's evaluation of the evidence clearly reflects the ALJ's consideration of these alleged issues to the extent he found support for them in the record.

To the extent that Burch's arguments are essentially asking the court to again analyze the facts and reweigh the evidence presented, such action is contrary to the substantial evidence standard of review that this court is bound to apply at this stage in the proceedings.  See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).  The court finds that the ALJ sufficiently explained his reasons to permit review and built a sufficient "accurate and logical bridge from the evidence to his conclusion."  Cf. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (remanding where the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion") (citation omitted); Mascio v. Colvin, 780 F.3d 632, 636-37 (4th Cir. 2015) (holding remand may be appropriate when the courts are left to guess at how the ALJ arrived at the conclusions and meaningful review is frustrated).  Accordingly, the court finds that Burch has failed to demonstrate that the ALJ's residual functional capacity assessment is unsupported by substantial evidence or controlled by an error of law.

**ORDER**

For the foregoing reasons, the court finds that Burch has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  Therefore, it is hereby

**ORDERED** that the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

April 17, 2020  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE